1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  IN RE PORTAL SOFTWARE, INC        No   C-03-5138 VRW
     SECURITIES LITIGATION.

12                                 ORDER

13  _____/

14         Plaintiffs allege violation of the Securities Act of 1933

15  (the "'33 Act") and the Securities Exchange Act of 1934 (the "'34

16  Act") on behalf of investors who purchased securities of Portal

17  Software, Inc, between May 20, 2003, and November 13, 2003,

18  inclusive (the "class period").  In particular, plaintiffs assert

19  that defendants violated generally accepted accounting principles

20  (GAAP) by inflating artificially the price of Portal's stock and

21  making false and misleading statements on which plaintiffs relied,

22  thereby incurring substantial financial losses from purchasing

23  Portal stock at fraudulently inflated prices.

24         On August 17, 2006, the court denied defendants' motion

25  to dismiss plaintiffs' claims under sections 11, 12(a)(2) and 15 of

26  the '33 Act and granted defendants' motion to dismiss plaintiffs'

27  claims under sections 10(b)and 20(a) of the '34 Act.  Doc #155.

28  Additionally, because plaintiffs had amended their complaint four

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

times but still had not satisfied the Private Securities Litigation Reform Act's (PSLRA) heightened pleading requirements, the court dismissed plaintiffs' claims under the '34 Act with prejudice.  Id.

The parties reached a settlement on March 9, 2007, Doc #168, and now seek preliminary approval of various aspects of the settlement.  In particular, plaintiffs seek: (1) provisional certification of the settlement class; (2) preliminary approval of the settlement reached by the parties; (3) approval of the proposed form of notice; (4) establishment of a schedule for class members to object to the settlement and (5) a hearing on final approval of the settlement at which class members may be heard.  Doc #167.

I

Portal provides billing and subscriber management solutions to its clients primarily through its "Infranet" software, for which Portal charges companies "license fees."  Doc #135, ¶ 68. Portal also charges customers "service fees" for system implementation, consulting, maintenance and training.  Id. Following the "dot-com" market crash of 2001, Portal lost many of its dot-com startup customers and incurred financial losses that wiped out more than 96% of its equity.  Id ¶ 69.

Portal subsequently began to market its Infranet product to more established and sophisticated business customers, including telecommunications providers.  Id.  Portal's new clients required greater software customization than had the dot-com startups, which in turn affected how Portal could recognize license fee revenues. Id.  Plaintiffs contend that under GAAP, a software provider cannot recognize licensing revenues for software that requires

2

United States District Court
For the Northern District of California

customization for a client until a substantial portion of the modification has been completed. Id ¶¶ 4, 44(e), 69. Although Portal historically could recognize revenue when it delivered its Infranet product to its dot-com clients, the greater customization required by Portal's new, more established clients required the company to defer recognizing revenue from many of its contracts until customization was complete. Id ¶ 153. Plaintiffs allege that during the class period, Portal began to manipulate its license fees to recognize more revenue "up-front." Id ¶¶ 70-71.

On September 12, 2003, Portal completed a secondary offering to the public at a price of $13.25 per share, thereby generating $60 million in net proceeds. Id ¶ 9. On November 13, 2003, defendants announced that due to contract delays, revenue recognition deferrals and service execution issues, Portal expected net losses of $0.36 to $0.40 per share for the third quarter of fiscal year (FY) 2004. Id ¶ 10. These losses contrasted with the $0.04 net profits per share that Portal had previously projected for the quarter. Id. After this announcement, Portal's common share price plummeted more than 42.5% to $8.77 in after-hours trading. Id ¶ 113.

Plaintiffs' complaint alleges that the accounting fraud described above was undertaken by defendants to inflate Portal's reported revenue numbers, which were then used by defendants to create false and misleading statements regarding Portal's financial health and future business prospects. According to plaintiffs, these false and misleading statements artificially inflated Portal's stock price and allowed defendants to complete a $60 million secondary offering on September 12, 2003. Plaintiffs'

United States District Court
For the Northern District of California

1   claims for violations of the '33 Act are based on alleged false and
2   misleading statements made in the registration statement and
3   prospectus issued in connection with the secondary offering.  Id,
4   ¶¶ 142-165.  Plaintiffs' claims for violations of the '34 Act are
5   based on alleged false and misleading statements disseminated to
6   the investing public via SEC filings and press releases.  Id, ¶¶
7   166-181.

8

9                                  II

10                                  A

11          Pursuant to FRCP 23, plaintiffs seek provisional
12  certification of their settlement class, which comprises all
13  purchasers of Portal securities during the class period.

14          FRCP 23(a) sets forth the preliminary requirements to
15  certifying a class action:  (1) the class must be so numerous that
16  joinder of all members is impracticable; (2) there must be
17  questions of law or fact common to the class; (3) the claims or
18  defenses of the representative parties must be typical of the
19  claims or defenses of the class and (4) the representative parties
20  must be able fairly and adequately to protect the interests of the
21  class.  FRCP 23(a); see also, e g, Armstrong v Davis, 275 F3d 849,
22  868 (9th Cir 2001); Walters v Reno, 145 F3d 1032, 1045 (9th Cir
23  1998).

24          "In determining the propriety of a class action, the
25  question is not whether the plaintiff or plaintiffs have stated a
26  cause of action or will prevail on the merits, but rather whether
27  the requirements of Rule 23 are met."  Eisen v Carlisle &
28  Jacquelin, 417 US 156, 178 (1974) (quoting Miller v Mackey Intl,

                                    4

452 F 2d 424 (5th Cir 1971)) (internal quotation marks omitted). "A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claim." <u>Little Caesar Enter v Smith</u>, 172 FRD 236, 241 (ED Mich 1997).  On a motion for class certification, the court "is bound to take the substantive allegations of the complaint as true." <u>Blackie v Barrack</u>, 524 F2d 891, 901 n17 (9th Cir 1975). Nonetheless, the court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." <u>Hanon v Dataproducts Corp</u>, 976 F 2d 497, 509 (9th Cir 1992).

        The court first assesses whether the FRCP 23(a) requirements of numerosity, commonality, typicality and adequacy are met.  Under FRCP 23(a)(1), the class must be "so numerous that joinder of all members is impracticable."  Plaintiffs estimate that their proposed class contains "thousands" of members, Doc #167 at 11, and assert that joinder would be impracticable because class members are geographically dispersed throughout the United States. The court agrees and finds that the numerosity requirement of Rule 23(a)(1) is satisfied.

        The court also concludes that the commonality requirement is met.  To satisfy FRCP 23(a)(2), "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Hanlon v Chrysler Corp</u>, 150 F3d 1011, 1019 (9th Cir 1998).  Plaintiffs allege, inter alia, that all class members paid artificially inflated prices for Portal stock due to defendants' misrepresentations.  Doc #167 at 12-13.  Common issues

of law and fact include whether defendants violated the Securities Act and, if so, whether the price of Portal stock was inflated artificially.  All class members' claims share these and other common questions of law and fact.

Along these lines, the court concludes that the named plaintiffs' claims appear to be typical of the putative class. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Hanon</u>, 976 F2d at 508 (internal quotation omitted).  See also <u>Estate of Jim Garrison v Warner Brothers et al</u>, 1996 WL 407849 at *2 (CD Cal 1996) ("Typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violation by the defendants").

Here, the typicality requirement is satisfied by the class representatives — John Romeo and Pipefitters Local 522 & 633 Pension Trust Fund ("Pipefitters") — because their claims and those of the class members they seek to represent derive from the same set of operative facts.  Romeo purchased 504,896 shares of Portal common stock during the settlement class period; Pipefitters purchased 2,500 shares of Portal stock in the secondary offering. Like the other settlement class members, class representatives allege they were damaged by their purchases of Portal common stock. Hence, the claims of the class representatives are typical of those of the settlement class.

Finally, FRCP 23(a)(4) provides that class representatives — both named plaintiffs and their counsel — must

**United States District Court**
For the Northern District of California

"fairly and adequately protect the interests of the class."
Legal adequacy turns on two questions: "(1) do named plaintiffs and
their counsel have any conflicts of interest with other class
members and (2) will the named plaintiffs and their counsel
prosecute the action vigorously on behalf of the class?"  Hanlon,
150 F3d at 1020.

Regarding the second inquiry, the court has no reason to
doubt that plaintiffs' counsel acted vigorously on behalf of the
class.  Yet the first inquiry gives the court pause, as the
representatives may have a conflict of interest with the class
relating to the pooling of '33 and '34 Act claimants in this case.
Such a conflict may exist if the representatives' proportionate
financial interest in the '33 and '34 Act claims deviates
significantly from the entire class's interest in these claims.
For example, if the class representatives purchased a higher number
of shares in the secondary offering (giving rise to '33 Act claims)
as compared to the class, the representatives may be tempted to
divert settlement proceeds from '34 Act to '33 Act claims.

According to plaintiffs, Romeo purchased 504,896 shares
of Portal common stock during the settlement class period and
Pipefitters purchased 2,500 shares of Portal stock in the secondary
offering.  But this assertion does not establish that the
representatives' financial interest with respect to these claims is
proportionate with those of the entire class.  That said, this
conflict may have little consequence here due to the court's
dismissal of the '34 Act claims.  Nonetheless, the court expects
counsel to address this issue in its briefing for the final
approval hearing.

**United States District Court**
For the Northern District of California

In addition to satisfying the Rule 23(a) prerequisites, the class must also satisfy one of the three alternatives listed under Rule 23(b). <u>Walters</u>, 145 F3d at 1045. Plaintiffs bear the burden of demonstrating that they have satisfied all four FRCP 23(a) elements and one FRCP 23(b) alternative. <u>Zinser v Accufix Research Institute, Inc</u>, 253 F3d 1180, 1186 (9th Cir 2001). Failure to carry the burden on any FRCP 23 requirement precludes certifying a class action. <u>Burkhalter Travel Agency v MacFarms Int'l, Inc</u>, 141 FRD 144, 152 (ND Cal 1991) (Jensen, J) (citing <u>Rutledge v Electric Hose & Rubber Co</u>, 511 F2d 668 (9th Cir 1975)).

Plaintiffs have opted to proceed under FRCP 23(b)(3), which authorizes the court to certify a class action if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and * * * a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FRCP 23(b)(3). See also <u>Zinser v Accufix Research Inst, Inc</u>, 253 F3d 1180, 1189 (9th Cir 2001). The matters pertinent to such a finding include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action. Id.

The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency. See FRCP 23(b)(3) advisory committee notes. When common issues predominate,

1  class actions achieve these objectives by minimizing costs and

2  avoiding the confusion that would result from inconsistent

3  outcomes.  Id.

4  　　　To predominate, common questions "need not be dispositive

5  of the litigation."  Romero v Producers Dairy Foods, Inc, 235 FRD

6  474, 489 (ED Cal 2006).  Rather, the court must identify issues

7  involved in the cases and determine which of them "are subject to

8  generalized proof * * * applicable to the class as a whole" and

9  which must be the subject of proof on behalf of individualized

10 class members.  Id.  "Because no precise test can determine whether

11 common issues predominate, the court must pragmatically assess the

12 entire action and the issues involved."  Id.  Courts in securities

13 cases, as in other cases, typically evince a greater willingness to

14 certify classes involving individualized damages, as opposed to

15 individualized liability issues.  See Alexander v QTS Corp, 1999 US

16 Dist LEXIS 11842 (ND Ill 1999).

17 　　　Here, the common questions concern whether defendants

18 violated the Securities Act and, if so, whether such violations

19 affected the price plaintiffs paid for Portal stock.  See, e g,

20 Freedman v La-Pac Corp, 922 F Supp 377, 399-400 (D Or 1996); In re

21 Emulex, 210 FRD 717, 721 (CD Cal 2002) (granting motion for class

22 certification because "[t]he predominant questions of law or fact

23 at issue in this case are the alleged misrepresentation defendants

24 made during the class period and are common to the class"); In re

25 Unioil Sec Litig, 107 FRD 615, 622 (CD Cal 1985) ("As plaintiffs'

26 claim is based on a common nucleus of misrepresentations, material

27 omissions and market manipulations, the common questions

28 predominate over any differences between individual class members

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

with respect to damages, causation or reliance."). Accordingly, the court finds that common questions of law and fact predominate over individual questions and that class treatment of this matter is superior to any other available means of adjudication.

B

The court next considers whether the proposed settlement should be preliminarily approved.

> "[The] preliminary determination establishes an initial presumption of fairness * * *." <u>In re General Motors Corp</u>, 55 F3d 768, 784 (3d Cir 1995) (emphasis added). As noted in the Manual for Complex Litigation, Second, "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing * * *." Manual for Complex Litigation, Second § 30.44 (1985). In addition, "[t]he court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid." Newberg on Class Actions § 11.25 (1992).

<u>Schwartz v Dallas Cowboys Football Club, Ltd</u>, 157 F Supp 2d 561, 570 n12 (ED Pa 2001). In other words, preliminary approval of a settlement has both a procedural and a substantive component.

The court finds that the procedure for reaching this settlement was fair and reasonable and that the settlement was the product of arms-length negotiations. Doc #167. Experienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, negotiated this settlement over an extended period of time in early 2007. Doc #167 at 3-8.

10

United States District Court
For the Northern District of California

The substantive fairness and adequacy of the settlement and plan of allocation confirms this view of the fair procedures used to reach the settlement.  To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.  See <u>Armstrong</u>, 616 F2d at 314; <u>Grunin v Int'l House of Pancakes</u>, 513 F2d 114, 124 (8th Cir 1974).

The proposed settlement agreement provides that defendants will pay $3,250,000 in cash into a fund to be distributed to class members.  Doc #167 at 2.  Considering the maximum provable damages in this case, $13 million, balanced against the value of the settlement offer, the settlement consideration seems reasonable, particularly in light of the court's dismissal of the '34 Act claims.  Based on the risk of summary judgment, which defendants had filed before settlement, see Doc #158, and the anticipated expense and complexity of further litigation, the court cannot say that the proposed settlement is obviously deficient or is not "within the range of possible approval."  <u>Schwartz</u>, 157 F Supp 2d at 570 n12.

The court also preliminarily approves plaintiffs' proposed plan of allocation, which differentiates between the '33 Act and the '34 Act claimants.  Lead counsel employed a damages consultant, Bjorn Steinholt, to draft a plan of allocation to ensure a fair distribution of the available settlement proceeds. Steinholt's proposed plan distinguishes between class members asserting '34 Act claims, comprising all members who purchased Portal common stock during the class period, and those asserting '33 Act claims, comprising members who purchased stock in the September 12, 2003, secondary offering.  Doc #170.  Because the

United States District Court
For the Northern District of California

court dismissed the '34 Act claims with prejudice, settlement class members asserting a '34 Act claim will be allocated 5% of the total settlement proceeds, after fees and expenses.  Doc #170, ¶ 10.  The remaining 95% of the total settlement proceeds, after fees and expenses, will be allocated to settlement class members with a '33 Act claim.  Id.

Courts frequently endorse distributing settlement proceeds according to the relative strengths and weaknesses of the various claims.  See In re Warner Communications Sec Litig, 618 F Supp 735, 745 (SDNY 1985), aff'd, 798 F2d 35 (2d Cir 1986); In re Agent Orange Prod Liab Litig, 611 F Supp 1396, 1411 (EDNY 1985) ("[I]f one set of claims had a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh 'distribution of the settlement * * * in favor of plaintiffs whose claims comprise the set' that was more likely to succeed.") (quoting In re Corrugated Container Antitrust Litig, 643 F2d 195, 220 (5th Cir 1981)); Petrovic v AMOCO Oil Co, 200 F3d 1140, 1152 (8th Cir 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly).  Distinguishing between the '33 and '34 Act claims seems appropriate here, as the court dismissed the '34 Act claims with prejudice before settlement.  Accordingly, the court cannot conclude that the plan of allocation is obviously deficient or is not "within the range of possible approval." Schwartz, 157 F Supp 2d at 570 n12.

The court next takes up the form of notice.  At the hearing on the present motion, the court instructed counsel to include their estimated lodestar in the notice to enable class

12

United States District Court

For the Northern District of California

members to assess the reasonableness of counsel's fee request.  The declaration, Doc #173, and amended notice, Doc #174, Ex A-1, subsequently submitted by counsel comply with the court's request.

Plaintiffs propose that notice be disseminated to all class members who can be identified with reasonable effort to inform them of the terms of the settlement, their rights in connection with the settlement and the date of the final approval hearing.  Doc #167 at 19; Doc #174, Ex A-1.  Plaintiffs further propose that a summary notice, see Doc #174, Ex A-3, be published in the national edition of *Investor's Business Daily.*

The court agrees with plaintiffs that notice by mail and publication is the "best notice practicable under the circumstances," as mandated by FRCP 23(c)(2)(B).  See also <u>In re Domestic Air Transp Antitrust Litig</u>, 141 FRD 534, 550-51 (ND Ga 1992) (providing that notice by mail to those class members who could be identified and by publication only to those who could not be identified satisfies due process requirements); <u>Manual for Complex Litigation</u> (4th ed 2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort").  Accordingly, the court APPROVES the proposed form of notice, as to both form and content.

//
//
//
//
//
//

13

United States District Court
For the Northern District of California

III

In sum, the court GRANTS plaintiffs' motion for provisional certification of the settlement class, APPROVES preliminarily the proposed settlement and plan of allocation and ORDERS the following schedule for further proceedings:

| Date | Event |
|---|---|
| July 5, 2007 | Notice mailed to settlement class and summary notice published |
| August 13, 2007 | Deadline to postmark objections or opt out |
| August 20, 2007 | Deadline for filing briefing in support of final approval of settlement |
| September 6, 2007, at 2:00 pm | Hearing on final approval of settlement |

At the final approval hearing on September 20, 2007, at 2:00 pm, the court will determine:  (1) whether the proposed settlement should be approved as fair, reasonable and adequate; (2) the merits of objections, if any, made to the settlement or any of its terms; (3) the amount of litigation costs, expenses and attorney fees, if any, that should be awarded to class counsel; and (4) other matters related to the settlement.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge

14